# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                                                               CHAPTER 11

FISH & FISHER, INC.                                                                 CASE NO. 09-02747-EE

    DEBTOR

| | |
|---|---|
| Ronald H. McAlpin<br>Department of Justice<br>501 East Court Street, Suite 6-430<br>Jackson, MS 39201 | Assistant U.S. Trustee |
| Craig M. Geno<br>Harris, Jernigan & Geno, PLLC<br>587 Highland Colony Pkwy.<br>P.O. Box 3380<br>Ridgeland, MS 39157 | Attorney for Equity Security Holders,<br>Renna Fisher and Jacqueline Williams |
| James W. O'Mara | Chapter 11 Trustee |
| James W. O'Mara<br>Tommie Wilsford Allen<br>Phelps Dunbar LLP<br>4270 I-55 North<br>Jackson, MS 39211-6391 | Attorneys for Chapter 11 Trustee |
| Luke Dove<br>Dove & Chill<br>1020 Highland Colony Parkway,<br>Suite 412<br>Ridgeland, MS 39157 | Attorney for Horne LLP |

Edward Ellington, Judge

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE**
**(1) *UNITED STATES TRUSTEE'S MOTION TO RECONSIDER ORDER***
***GRANTING APPLICATION TO EMPLOY HORNE LLP AS ACCOUNTANTS* AND**
**(2) *JOINDER OF EQUITY SECURITY HOLDERS RENNA FISHER AND***
***JACQUELINE WILLIAMS IN MOTION TO RECONSIDER ORDER GRANTING***
***APPLICATION TO EMPLOY HORNE LLP AS ACCOUNTANTS***
***<u>FILED BY THE DEBTOR AND THE UNITED STATES TRUSTEE</u>***

**THIS MATTER** came before the Court on the *United States Trustee's Motion to Reconsider*

*Order Granting Application to Employ Horne LLP as Accountants* (the "*Motion to Reconsider*") filed by R. Michael Bolen, United States Trustee, Region 5, Judicial Districts of Louisiana and Mississippi (the "U.S. Trustee"), the *Joinder of Equity Security Holders Renna Fisher and Jacqueline Williams in Motions to Reconsider Order Granting Application to Employ Horne LLP as Accountants Filed by the Debtor and the United States Trustee* (the "*Joinder*") filed by Renna Fisher ("Fisher") and Jacqueline Williams ("Williams"), and the *Trustee's Joint Response to Motions by Debtor and by United States Trustee to Reconsider Order Granting Application to Employ Horne LLP as Accountants* filed by the Chapter 11 Trustee, James W. O'Mara.[1] A hearing was held on November 19, 2010, after which the Court took the above matters under advisement.

After considering the testimony, evidence, and arguments of counsel, the Court finds: (1) that the *Motion to Reconsider* and *Joinder* are well taken and should be granted; (2) that the *Order Authorizing Employment of Horne CPA Group as Accountants, Auditors and Tax Consultants for the Trustee* (the "*Order Authorizing Employment*") should be vacated and set aside; and (3) that the *Application to Employ Horne CPA Group as Accountants, Auditors and Tax Consultants for the Trustee* (the "*Application to Employ*") should be denied.

## INTRODUCTION

The facts presented at the hearing were largely undisputed. The issue now before the Court is whether those facts show that Horne LLP ("Horne")[2] is qualified for employment as the

---

[1] On August 27, 2010, the Debtor, Fish & Fisher, Inc., also filed a *Motion to Reconsider,* but counsel for the Debtor withdrew from this case on October 26, 2010, after the appointment of the Chapter 11 Trustee.

[2] In the pleadings, the parties sometimes refer to Horne LLP as Horne CPA Group. To avoid confusion, this opinion uses the name "Horne" from this point forward.

accounting firm for the Debtor, Fish & Fisher, Inc. (the "Debtor"). Although the employment of Horne was approved by the Court on August 18, 2010, the U.S. Trustee asks this Court to reconsider the *Order Authorizing Employment* on grounds that Horne does not satisfy the disinterestedness standard for the employment of professionals set forth in 11 U.S.C. § 327[3] and that Horne's sworn statement submitted in support of the employment application is inadequate under Rule 2014 of the Federal Rules of Bankruptcy Procedure.[4] Fisher and Williams, who are shareholders of the Debtor, likewise urge the Court to reconsider Horne's employment but for different reasons. The conflict of interest and disclosure issues raised by the U.S. Trustee, Fisher, and Williams require a fact-specific inquiry into Horne's connections with the Debtor, both before and after the commencement of this bankruptcy case.

**FINDINGS OF FACT**

On August 7, 2009, an involuntary petition for relief was filed against the Debtor under Chapter 7 of the Bankruptcy Code by Merchants & Farmers Bank, Bonds Company, Inc., and Busylad, Inc. An order for relief was entered on September 23, 2009. After becoming concerned about the Debtor's handling of proceeds from a recent arbitration award, Horne filed on March 2, 2010, a *Joinder in Involuntarily [sic] Petition Pursuant to 11 U.S.C. § 303(B)*, alleging that Horne "is a creditor of [the Debtor] and holds an unsecured claim." (Eq. Sec. Holders Ex. 2).[5] Horne also filed a proof of claim in the amount of $113,760.90, and attached to its proof of claim copies of

---

[3] Hereinafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[4] Hereinafter, all rules refer to the Federal Rules of Bankruptcy Procedure unless specifically noted otherwise.

[5] Exhibits introduced into evidence by the U.S. Trustee are cited as "(UST Ex. __ )". Exhibits introduced into evidence by Fisher and Williams are cited as "(Eq. Sec. Holders __ )".

unpaid invoices for general accounting, tax, and business advisory services provided the Debtor from February, 2007, through April, 2009. (UST Ex. 1). The face value of Horne's claim is substantially more than $50,000, which is what the Debtor listed in its schedules as the amount it owed Horne for its pre-petition accounting services.

Upon motion of the Debtor, the Court converted this bankruptcy case to a Chapter 11 case on March 2, 2010. On March 9, 2010, Merchants & Farmers Bank filed a motion to re-convert the case to Chapter 7. Horne filed a *Joinder in Motion to Convert to Chapter 7 Proceeding* (Eq. Sec. Holders Ex. 1) and a *Motion for Bankruptcy Rule 2004 Examination* "to examine Debtor as to its acts, conduct, property, assets, liabilities, financial condition and any matters which may effect the administration of Debtor's estate" on April 9, 2010. (Eq. Sec. Holders Ex. 3).

Horne and Merchants & Farmers Bank agreed to settle their conversion motions after the Debtor agreed to the appointment of a Chapter 11 trustee. This agreement was approved by the Court in an order dated July 8, 2010. Shortly thereafter, the U.S. Trustee selected James O'Mara (the "Trustee") to serve as the Chapter 11 Trustee in this case.[6] The Trustee's selection was approved by the Court on July 13, 2010.

The Trustee quickly determined, and rightly so, that the employment of an accountant was necessary for the successful reorganization of the Debtor, a contention that no one disputed at the hearing. The Trustee chose Horne[7] to provide post-petition accounting and other related services

---

[6] United States trustees have authority to supervise the administration of cases and trustees in cases under Chapter 11 but generally do not become involved in the day-to-day duties of the trustee. 28 U.S.C. § 586(a)(3). They serve a supervisory role and are charged specifically with "monitoring applications filed under section 327 of title 11." 28 U.S.C. § 586(a)(3)(I).

[7] The competency and qualification of Horne to provide accounting services was undisputed at the hearing.

to the estate. The Trustee was aware, however, that Horne was disqualified from being hired so long as Horne remained a pre-petition creditor of the estate. In an attempt to remove Horne's creditor status, Horne arranged for the sale of its pre-petition claim to Argo Partners. It is this sale, and the disclosure of the terms of this sale, that are the subject of the present dispute.

On August 12, 2010, Argo Partners filed a *Notice of Transfer of Claim Other Than for Security* (the "*Notice of Transfer*"), indicating that Argo Partners had purchased Horne's pre-petition claim.[8] (UST Ex. 2). Argo Partners attached to the *Notice of Transfer* a copy of *Assignment of Claim 10*, but redacted the initial amount of consideration paid by Argo Partners for Horne's claim and omitted the exhibit to the *Assignment of Claim 10* that set forth the full amount of consideration paid by Argo Partners. According to testimony at the hearing, the omission of this exhibit was unintentional.

On August 17, 2010, the Trustee filed his *Application to Employ,* which included the affidavit of a representative of Horne. (UST Ex. 4). Of relevance to this matter is paragraph 7 of the affidavit, which provides the only information in the *Application to Employ* regarding the sale of Horne's pre-petition claim:

> 7. I am informed and believe that Horne is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b). Horne provided pre-petition professional accounting services to the Debtor, Fish & Fisher, Inc., and the Debtor was indebted to Horne for approximately $115,000 for pre-petition services. Horne has irrevocably transferred and assigned said claim and indebtedness in its entirety to Argo Partners, Inc. The transfer to Argo Partners, Inc., includes the right to vote on the Plan of Reorganization, to compromise said claim and to take all action in this case relating to said claim which

---

[8] While still represented by counsel, the Debtor filed an *Objection to Transfer of Claim to Argo Partners* (the "*Objection*"), on the ground that the *Assignment of Claim 10* did not clearly explain the extent of Horne's waiver of its pre-petition claim or the terms of the waiver. That *Objection* is not presently before the Court.

>it may deem appropriate; provided, however, that a portion of the purchase price for the transfer of said claim is dependent upon the total distribution made by the estate to Argo Partners, Inc.

(UST Ex. 4). According to his testimony at the hearing, the Trustee added the last statement at Horne's specific request: "a portion of the purchase price for the transfer of said claim is dependent upon the total distribution made by the estate to Argo Partners, Inc."

On August 18, 2010, an *Order Authorizing Employment* was entered. According to the U.S. Trustee, a copy of the exhibit that was omitted from the *Assignment of Claim 10* was provided to him, but only at his specific request. (UST Ex. 3). Neither the Trustee nor Horne filed the exhibit with the Court before the hearing on the *Motion to Reconsider* or at any time since then.

According to the exhibit, and consistent with the testimony presented at the hearing, the purchase price that Argo Partners had agreed to pay for Horne's pre-petition claim was contingent on the outcome of the Debtor's bankruptcy case. (UST Ex. 3). Argo Partners made an initial payment to Horne of $10,000. However, payment of that amount was not fixed, but was contingent on the amount Argo Partners would receive in the Debtor's plan of reorganization, as was payment of additional amounts in the event the distribution to Argo Partners under the plan exceeded $10,000, calculated as follows: (1) if the distribution was less than $10,000, then Horne would reimburse Argo Partners up to $10,000, and thereby guarantee payment to Argo Partners of not less than $10,000; (2) if the distribution equaled or was less than $30,000, then Argo Partners would simply retain the entire amount up to $30,000; or (3) if the distribution exceeded $30,000, then Argo Partners would receive $30,000, and share the amount in excess of $30,000 on a fifty-fifty basis with Horne.

The U.S. Trustee bases his *Motion to Reconsider* Horne's employment primarily on the

purchase price for Horne's claim as disclosed in the missing exhibit. The U.S. Trustee contends that the transaction between Horne and Argo Partners did not constitute an "irrevocable" transfer of the claim "in its entirety," as it was described in the affidavit submitted by Horne in support of the *Application to Employ,* and did not remedy Horne's lack of disinterestedness. Specifically, the U.S. Trustee insists that the transfer did not fully remove Horne's creditor status because Horne retains, albeit indirectly, a financial interest in the estate ranging from $10,000—which represents the amount Horne must pay Argo Partners as a refund of the purchase price if Argo Partners receives nothing from the estate—to $41,880.47 [9]— which represents the amount Argo Partners must pay Horne if Argo Partners receives the full face value of the claim from the estate. In addition, the U.S. Trustee contends that apart from Horne's financial interest, Horne's active involvement in the bankruptcy case prior to the appointment of the Trustee disqualifies it from employment by the estate. Finally, the U.S. Trustee states that the *Application to Employ* did not fully and clearly disclose the precise terms of the transaction between Horne and Argo Partners.

On September 28, 2010, Fisher and Williams filed a *Joinder* in the *Motion to Reconsider* and, shortly thereafter, amended the Debtor's bankruptcy schedules to add to the Debtor's list of contingent and unliquidated claims a "[p]ossible claim against Horne." (Eq. Sec. Holders Ex. 4). Because Fisher and Williams, who are both shareholders of the Debtor, filed the amendment without the knowledge or approval of the Trustee, the Trustee maintained at the hearing that the amendment was improper, vehemently denied having knowledge of any facts that would give rise

---

[9] This figure, $41,880.47, is the difference between $113,760.94 (the face value of Horne's proof of claim) and $30,000 (the amount Argo Partners has the exclusive right to retain from any distributions by the estate), divided by half. ($113,760.94 - $30,000 = $83,760.94 and $83,760.94 ÷ 2 = $41,880.47). In his *Motion to Reconsider*, the U.S. Trustee incorrectly calculates this amount to be $41,865.47.

to such a claim, and questioned as suspect the timing of the filing of the amendment in relation to the hearing date. Even so, Williams testified at the hearing that she believed the Debtor had a possible professional malpractice claim against Horne. It is unnecessary for the Court to resolve this particular factual dispute for the reasons explained below.

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

### II.

#### A.

Under § 327(a) a trustee may employ, with court approval, one or more professional persons to assist him in carrying out his duties provided they satisfy two requirements: (1) they do not hold or represent an interest adverse to the estate, and (2) they are disinterested persons. Section 327(a) provides in full:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

A disinterested person is determined by reference to § 101(14), which defines a disinterested person, in pertinent part, as someone who is not a creditor, equity security holder, or insider of the debtor and who is not, and was not within the past two years, a director, officer, or employee of the debtor. Clearly, the Trustee was correct in his initial belief that Horne could not qualify as a disinterested

person under this definition because of its creditor status. He is also correct that Argo Partners' post-petition purchase of Horne's claim eliminated Horne's status as a creditor of the estate and ended the financial connection between Horne and the Debtor, at least insofar as Horne's ability to pursue its claim directly against the estate. However, the disinterestedness standard as defined by §101(14) requires more.

A disinterested person is also defined in § 101(14)(C) as someone who does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor. This prong of the definition includes the adverse interest language that appears in § 327(a). Holding an interest adverse to the estate for purposes of both § 327(a) and § 101(14) means, in pragmatic terms, "to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate that would create either an actual or potential dispute in which the estate is a rival claimant," or "to possess a pre-disposition under circumstances that render such a bias against the estate." *I.G. Petroleum, LLC v. Fenasci (In re West Delta Oil Co.)*, 432 F.3d 347, 356 (5th Cir. 2005) (citing *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985)). The purpose behind this provision is to preclude the employment of a professional "who in the slightest degree might have some relationship that would color the independent and impartial attitude required by the Code." *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.)*, 785 F.2d 1249, 1256 (5th Cir. 1986).

Here, Horne clearly holds an economic interest that is adverse to the estate for the simple reason that Horne will sustain a financial loss if the estate pays Argo Partners less than $10,000, and will receive a financial benefit if the estate pays Argo Partners more than $30,000. The presence

of this interest disqualifies Horne from employment. The Trustee's contention that Horne became disinterested when it relinquished its right to seek payment directly from the estate misses the point. By way of illustration, if Argo Partners had purchased a racehorse from Horne, so that Argo Partners alone was responsible for its care and training and only Argo Partners decided what races it would run, no one would dispute that the sale ended Horne's ownership of, and responsibility for, the racehorse. Nevertheless, if the purchase price that Argo Partners paid Horne for the racehorse was contingent on its future purse earnings, it would be disingenuous to argue that Horne would be disinterested in what place the racehorse finished in those races, especially if Horne had to refund a portion of the purchase price in the event the racehorse finished last. Similarly, it is just as disingenuous to argue that Horne would be disinterested in what place Argo Partners' claim finished in the bankruptcy case.

In his *Motion to Reconsider*, the Trustee relies on *In re 7677 East Berry Avenue Associates*, 419 B.R. 833, 854 (Bankr. D. Colo. 2009), in support of his position, but that case is factually distinguishable. The issue in *7677 East Berry Avenue* was whether the employment by the debtors of a law firm that held a substantial pre-petition claim against the debtors for legal fees violated the disinterestedness standard. Rather than waiving its pre-petition claim, the firm sold its claim to an affiliate in return for a promissory note and deed of trust. Because the transaction succeeded in removing the firm as a creditor of the estate, the bankruptcy court allowed the firm's employment as counsel for the debtors. The court noted, however, that the fact that payment for the claim did not depend on the buyer being paid anything by the estate was "[p]erhaps the most important factor" in its decision. *Id.* That fact, of course, is missing from the present case where the purchase price does indeed depend on the distributions received by Argo Partners from the estate. For that reason,

the Trustee's reliance on *7677 East Berry Avenue* is misplaced.  As noted above, an interest is considered adverse to the estate under § 327(a) and § 101(14) if it would tend to lessen the value of the estate or foster a pre-disposition against the estate.  Horne's interest falls within both categories.

Indeed, the presence of the adverse interest is striking in light of the Trustee's testimony that the scope of Horne's employment includes investigating all proofs of claims filed in the case. Because the Debtor disputes the face value of Argo Partners' claim, Horne itself would play a role in deciding the purchase price for the sale of its own claim, an untenable arrangement from the perspective of the Debtor's creditors and shareholders.  Although the Trustee stated near the end of the hearing that he would limit Horne's employment so as to "carve out" Horne's involvement in determining the amount of Argo Partners' claim, neither the *Application to Employ* nor the *Order Authorizing Employment* includes any limitation on the accounting services provided by Horne to the estate.

Needless to say, the terms of the sale of Horne's claim were unusual because in the trade claim market, the purchase price normally is set as a percentage of the face value of the claim.  *APS Capital Corp. v. Mesa Air Group Inc.*, 580 F.3d 265, 267 n.1 (5th Cir. 2009).  For whatever reason, Horne and Argo Partners choose to fix the purchase price in a way that deviated from the normal trade practice.  By making the price contingent on distributions from the estate, the parties created an incentive for Horne to act contrary to the best interests of the estate and its creditors.  *See Rome v. Braunstein*, 19 F.3d 54, 59 (1st Cir. 1994) (the test for an impermissible conflict of interest contemplates an objective screening for even the appearance of impropriety).

For the reasons set forth above, the Court concludes that Horne is disqualified from employment as the result of its pre-petition claim.  It is, therefore, unnecessary to determine whether

the alleged professional malpractice claim against Horne or whether Horne's active stance in this case before its employment by the Trustee likewise renders Horne disqualified.

**B.**

The U.S. Trustee's alternative contention that the *Application to Employ*, or more specifically, that the affidavit submitted in support of the *Application to Employ* fails the disclosure standard, warrants brief discussion. Rule 2014 requires that a prospective professional disclose all connections with the debtor. Rule 2014(a) provides in pertinent part:

> An order approving the employment of . . . accountants . . . shall be made only on application of the trustee or committee. . . . The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor . . . . The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor . . . .

The extent of the applicant's connections with the debtor and the required amount of disclosure are undefined by the Code and the Rules. Courts have held, however, that an applicant must disclose all connections regardless of whether they rise to the level of a disqualifying conflict. *Waldron v. Adams and Reese (In re American Int'l Refinery, Inc.)*, 436 B.R. 364, 379 (Bankr. W.D. La. 2010); *see also In re Peoples Sav. Corp.*, 114 B.R. 151, 154 (Bankr. N.D. Ill. 1990) (burden is upon person making statement to make candid and complete disclosure). These holdings are consistent with the purpose behind Rule 2014(a), which is to provide courts and the United States trustees with sufficient information to determine de novo whether the professional's employment is in the best interest of the estate. *In re The Leslie Fay Cos.,* 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994). To lessen the disclosure obligation because of an applicant's personal belief that no disqualifying conflict exists, would vitiate this purpose. *In re Huddleston*, 120 B.R. 399, 401 (Bankr. E.D. Tex.

1990).

The Trustee insists that the *Application to Employ* provided sufficient information about the sale of Horne's pre-petition claim, and he has not deemed it necessary to amend or supplement the *Application to Employ* since he initially filed it. *See West Delta Oil Co.*, 432 F.3d at 355 (full disclosure under Rule 2014 is a continuing responsibility). The Court, however, agrees with the U.S. Trustee that the affidavit's description of the claim transfer as "irrevocable" and "in its entirety" is inaccurate at best. Moreover, the provision added at Horne's request that "a portion of the purchase price . . . is dependent on the total distribution made by the estate . . ." does not cure the deficiency because the affidavit omits critical details of the transaction, including: (1) that Horne agreed to refund the $10,000 purchase price if Argo Partners recovered less than that amount from the estate; and (2) that Horne would share in any amount paid by the estate in excess of $30,000. It is these missing details that show that the sale of the claim was more form than substance.

In short, the Rule 2014 affidavit characterized the claims transfer in such a way as to make it difficult for the Court and the U.S. Trustee to gauge Horne's lack of disinterestedness. The U.S. Trustee's complaint in his *Motion to Reconsider* that he had to "ferret out" information from other sources to determine the extent and status of Horne's pre-petition claim is well grounded. Indeed, if the terms of the transfer had been disclosed fully, it is likely that this Court would have denied the *Application to Employ* in the first place. The failure to disclose fully and unambiguously Horne's interest in the claim sold to Argo Partners under these specific facts is independent grounds for vacating the order authorizing Horne's employment. *See In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 662 (Bankr. N.D. Ill. 2001); *In re Filene's Basement, Inc.*, 239 B.R. 845, 850 (Bankr. D. Mass. 1999).

## CONCLUSION

In conclusion, the Court finds that the *Motion to Reconsider* filed by the UST and the *Joinder* filed by Fisher and Williams should be granted and that the *Order Authorizing Employment* should be vacated and set aside. The Court further finds that the *Application to Employ* should be denied.

A separate judgment consistent with this opinion will be entered in accordance with Rule 9021.

**SO ORDERED.**